830 F.2d 187
 Freeman PAWNEE, William L. Pawnee, Jr., Michael J. Pawnee,
Gregory Pawnee, Lisa J. Pawnee, Muriel Littlecalf, Evelyn
Stanton Gardner, individually, and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 87-1131.
 United States Court of Appeals,
Federal Circuit.
 Sept. 28, 1987.
 
 Harvey L. Harmon, Sr., Kornfeld, Franklin & Phillips, Oklahoma City, Okl., argued for appellant. With him on the brief was Charles R. Underwood.
 Martin W. Matzen, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were F. Henry Habicht, II, Asst. Atty. Gen., Robert L. Klarquist and Pamela S. West. Also on the brief was Thornton W. Field and Peter Schaumberg, Office of the Solicitor, Dept. of the Interior, Washington, D.C., of counsel.
 Henry J. Sockbeson and Arlinda F. Locklear, Native American Rights Fund, Washington, D.C., were on the brief for amicus curiae. Also on the brief for amicus curiae were Robert M. Peregoy and Steven C. Moore, Native American Rights Fund, Boulder, Colo.
 Before DAVIS, Circuit Judge, BENNETT and MILLER, Senior Circuit Judges.
 DAVIS, Circuit Judge.
 
 
 1
 The underlying suit (transferred to the Claims Court from the District Court for the Western District of Oklahoma) was brought against the United States by Indians whose restricted Indian predecessors entered into oil and gas (primarily gas) leases on mining land (administered by the Interior Department) with oil companies; the action is for alleged violations of fiduciary duties by Interior in collecting royalties on those leases. The Claims Court held primarily that Interior had no fiduciary obligations toward the plaintiffs-appellants and accordingly dismissed for lack of jurisdiction. Pawnee, et al. v. United States, No. 53-85L (Cl.Ct., Oct. 31, 1986). We affirm the dismissal on the separate ground that plaintiffs have not stated a proper claim for fiduciary breaches.
 
 I.
 
 2
 FACTS AND PROCEEDINGS.
 
 
 3
 Plaintiffs are successors in interest of restricted Indians (themselves successors in interest of allottees of the Cheyenne-Arapaho Tribe) who now are beneficial owners of some mineral acreage in Oklahoma. The United States holds legal title to this land in trust for the plaintiffs. The beneficial owners' predecessors in interest, with the consent and approval of the then Secretary of the Interior, entered into two oil and gas mining leases of this mining land with oil companies which exploited and sold those commodities. One lease was made in 1957 and the other in 1963. Those leases provided that the Secretary will collect royalties on behalf of plaintiffs from the lessees. Plaintiffs say that the United States owes them an unfulfilled fiduciary obligation that they receive gas royalties computed on a market value determined by the average of the three highest prices paid for like quality gas at the time and the county of jurisdiction. An accounting was sought and damages asked of not less than $1,000,000 for the individual plaintiffs, and $500,000,000 for the class of which plaintiffs are members.[1] The United States denied all liability, the Claims Court directed the parties to file a motion regarding "jurisdiction," and the United States moved to dismiss for lack of subject matter jurisdiction, to which plaintiffs responded.
 
 
 4
 As we have said, the Claims Court granted that motion on the ground that the United States had no fiduciary obligation toward these plaintiff Indians with respect to the leases involved.
 
 II.
 
 5
 ISSUES.
 
 The issues are whether
 
 6
 (1) the United States, through the Secretary of the Interior, owes fiduciary obligations to appellant-Indians with respect to the making and administration of the leases and the collection and payment of royalties on the Indians' mineral lands leased for oil and gas purposes;
 
 
 7
 (2) if so, whether the complaint delineates a proper case for breach of that fiduciary obligation?
 
 III.
 
 8
 FIDUCIARY RELATIONSHIP.
 
 
 9
 First, we reject the Claims Court's broad denial of any general fiduciary relationship between appellant Indians and the Department of the Interior.
 
 
 10
 A. On that question, we start with the so-called Indian Long-Term Leasing Act, 25 U.S.C. Sec. 396, first enacted in 1909, which declares in pertinent part:
 
 
 11
 All lands allotted to Indians in severalty, except allotments made to members of the Five Civilized Tribes and Osage Indians in Oklahoma, may by said allottee be leased for mining purposes for any term of years as may be deemed advisable by the Secretary of the Interior; and the Secretary of the Interior is authorized to perform any and all acts and make such rules and regulations as may be necessary for the purpose of carrying the provisions of this section into full force and effect.... The Secretary of the Interior shall have the right to reject all bids whenever in his judgment the interests of the Indians will be served by so doing, and to readvertise such lease for sale.
 
 
 12
 This statute places the Secretary of the Interior at the center of the leasing of Indian mineral lands. He determines whether to consent to a lease and the terms of the lease; he performs "any and all acts" necessary to carry out the statute "into full force and effect"; and he makes such rules and regulations as may be necessary to carry out the legislation.[2]
 
 
 13
 In 1982, the Federal Oil and Gas Royalty Management Act, 30 U.S.C. Secs. 1701-57, was enacted. This statute covered both tribal and allotted Indian lands (as well as other government land). Among the expressed statutory purposes were (Sec. 1701(b)(4)) "to fulfill the trust responsibility of the United States for the administration of Indian oil and gas resources;" and (Sec. 1701(b)(5)) "to effectively utilize the capabilities of the States and Indian tribes in developing and maintaining an efficient and effective Federal royalty management system." The Congressional findings, embodied in the Act, declare (Sec. 1701(a)(4)) that "the Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas."[3] There were, for example, specific provisions on royalty payments to Indians. Secs. 1714, 1715.
 
 
 14
 There is doubt as to which of the current Interior regulations applied (in other forms) before passage of the 1982 Act, but there is no doubt that these current regulations (governing the Bureau of Indian Affairs) deal expressly, inter alia, with the maximum royalty rent, minimum rentals and royalties rate, length of the lease, methods of payment of rentals and royalties, 25 C.F.R. Secs. 212.4, 212.12, 212.14, 212.16. The regulations pertaining to the Minerals Management Service (successor to the Geological Survey--which formerly had these responsibilities--for these purposes) concern calculation of the value of the oil and gas purchased. 30 C.F.R. Part 206. The Bureau of Land Management is responsible for the operation of the Indian leases. 43 C.F.R. Part 3160. The total of these regulations is comprehensive, giving wide powers to Interior as to all aspects of the leasing arrangement.[4]
 
 
 15
 B. From these statutes and regulations we must draw the conclusion, which differs from that of the Claims Court, that the United States has a general fiduciary obligation toward the Indians with respect to the management of those oil and gas leases.[5] This case is very much like United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (Mitchell II, dealing with lumber) in that here the governing statutes and regulations (a) give elaborate powers to Interior with respect to those leases, (b) always call for consideration of the best interests of the Indians, (c) require proceeds of the leases to be given to the Indians and, (d) recognize the existence of a general trust relationship toward the Indians with respect to the oil and gas products of these lands. It is by no means controlling that the statutes fail to say explicitly that the Indians are entitled to damages if their rights are violated. As Mitchell II said (463 U.S. at 226, 103 S.Ct. at 2972-73):
 
 
 16
 Because the statutes and regulations at issue in this case clearly establish fiduciary obligations of the Government in the management and operation of Indian lands and resources, they can fairly be interpreted as mandating compensation by the Federal Government for damages sustained. Given the existence of a trust relationship, it naturally follows that the Government should be liable in damages for the breach of its fiduciary duties. It is well established that a trustee is accountable in damages for breach of trust.
 
 
 17
 And in Poafpybitty v. Skelly Oil Co., supra, 390 U.S. at 373, 88 S.Ct. at 986, the Court referred to the Government's "trust obligations" as to these Indian oil-and-gas leases transactions.
 
 
 18
 In a word, we agree with the in banc Tenth Circuit in Jicarilla Apache Tribe v. Supron Energy Corp., 782 F.2d 855 (10th Cir.1986), adopting for the most part the panel dissenting opinion, 728 F.2d 1555, 1563-73 (10th Cir.1984), that the United States is a general trustee with respect to Indian leases of this kind (though, of course, we do not consider the precise question before that court).
 
 IV.
 
 19
 A PROPER CLAIM.
 
 
 20
 That there is such a general fiduciary relationship does not mean that any and every claim by the Indian lessor necessarily states a proper claim for breach of the trust--a claim which must be fully tried in the Claims Court. Here, we think that no proper claim has been asserted and that the Claims Court correctly rejected the claims that were asserted.[6]
 
 
 21
 Appellants' complaint states their Count I claim as Interior's failure "to enable them to receive the benefits of gas royalties computed upon the market value determined by the highest price paid or offered for like quality gas at the time of production," and their Count II claim is for "the differences between the amount actually collected as gas royalties for plaintiffs' benefit and the amount which should have been collected for plaintiffs' benefit, based upon market value determined by the average of the three highest prices at the time of and in the county where it was produced " (emphasis added). The gravamen of this charge is that the Government did not pay them, as royalties, on the basis of the highest market value for the particular type of gas produced by the lessees.
 
 
 22
 The difficulty with this claim is that it runs counter to the governing regulation and the terms of the leases. The appellants demand royalties based on the highest market price or value at the time and/or place of production, but the governing regulation and the leases expressly restrict the highest price "for the major portion " of the gas "produced and sold from the field where the leased lands are situated" (emphasis added). 25 C.F.R. Sec. 212.16 states:
 
 
 23
 * * * During the period of supervision, "value" for the purposes of the lease may, in the discretion of the Secretary, be calculated on the basis of the highest price paid or offered (whether calculated on the basis of short or actual volume) at the time of production for the major portion of the * * * gas * * * produced and sold from the field where the leased lands are situated * * *. The actual amount realized by the lessee from the sale of said products may, in the discretion of the Secretary of the Interior, be deemed mere evidence of or conclusive evidence of such value. (Emphasis added.)
 
 
 24
 The two leases involved in this case precisely follow suit. The reference to highest prices is always linked to "the major portion" of the gas in the field.
 
 
 25
 There is no allegation that Interior failed to comply with the regulations or the leases in valuing the oil for royalty purposes. There is no statutory provision on that subject and no assertion that any statute has been violated. There is no claim that the leases were imprudently or illegally consummated. There is no suggestion that Interior failed to base royalty payments on all the gas sold by the lessees and the sums paid over by them. Thus, the claim is simply that the Interior Department is compelled to go contrary to and beyond the regulations and the leases in order to fulfill its alleged fiduciary obligation to appellants.
 
 
 26
 That is a proposition we cannot accept. As shown in Part II, supra, the fiduciary relationship springs from the statutes and regulations which "define the contours of the United States' fiduciary responsibilities." Mitchell II, supra, 463 U.S. at 224, 103 S.Ct. at 2972. Where, as in this case, the regulations and the leases deal directly with the problem and are not challenged, the Indians cannot demand that the United States ignore those provisions or act contrary to them. The scope and extent of the fiduciary relationship, with respect to this particular matter, is established by the regulation and leases. Appellants cannot create a viable fiduciary claim purely by insisting that this court (or the Claims Court) establish different or higher standards. That is a function solely of Congress or its delegates, not of the courts acting on their own. Interior is not required to go beyond directives and leases which are consistent with the statutes and regulations.
 
 
 27
 Because appellants have not stated a proper claim for breach of trust, we affirm the judgment of dismissal on the grounds set forth in Part IV of this opinion.[7]
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The complaint in the Claims Court also asserts that this action is brought on behalf of all the Indians similarly situated whose lands have been similarly leased
 
 
 [2]
 The legislative history of the 1909 Act supports the view that Congress was much interested in having Interior oversee the leasing of the Indian lands so as to prevent exploitation of and prejudice to the Indians' interest, or injustice to them. H.R.Rep. No. 1225, 60th Cong., 1st Sess. at 1-2 (1908)
 In 1925, Interior issued regulations under 25 U.S.C. Sec. 396, supra, which required Interior approval of leases and called upon the departmental "inspector" to consult with the department "for protecting the property of the [Indian] lessor and securing compliance with the provisions of this regulation."
 
 
 [3]
 The statute's legislative history declares (among other purposes) that the Act's purpose is "to fulfill the trust responsibility of the United States for the administration of Indian oil and gas resources...." H.R.Rep. No. 859, 97th Cong., 1st Sess. 15, reprinted in 1982 U.S.Code Cong. & Admin.News 4268
 The legislative history also includes the report of the Linowes Commission which was previously established to study accountability for receipts from federal Indian oil and gas. The Commission's report (issued in 1982) stated that "the Federal Government has a special responsibility as trustee for proper management of Indian natural resources." Commission Report, p. 6. The Report listed (in an Appendix) the various "trust responsibilities" of the Bureau of Indian Affairs "with respect to the development and production of Indian minerals held in trust or in restricted status." These responsibilities included "[c]ollecting, accounting, and distributing bonus and rental income prior to production," as well as "[m]aking distribution of royalty payment after it is transmitted from USGS royalty management office, once production begins."
 
 
 [4]
 The then regulations are summarized in Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 372-73, 88 S.Ct. 982, 986, 19 L.Ed.2d 1238 (1968) (dealing with land comparable to that involved here). Poafpybitty said that "the United States has exercised its supervisory authority over oil and gas leases in considerable detail" (390 U.S. at 373, 88 S.Ct. at 986)
 
 
 [5]
 This does not mean, as we discuss in Part IV, infra, that every Government action disliked by the Indians is automatically a violation of that trust
 
 
 [6]
 In its opinion, the Claims Court pointed out, as we do infra, that the pertinent regulations and leases were fully followed by Interior, and there was no abuse of discretion or arbitrary or capricious action alleged by appellants
 
 
 [7]
 Though the Claims Court dismissed for lack of jurisdiction, we uphold that dismissal on the basis of failure to state a proper cause of action, i.e., on the merits. The Claims Court and we both have jurisdiction to decide that no proper claim has been stated. Ralston Steel Corp. v. United States, 169 Ct.Cl. 119, 340 F.2d 663, 667-68 (1965)