UNITED STATES of America, Plaintiff–Appellee,

v.

Valerie WILSON; Mickey Gemmill; Lauri Davis; Anna Henry; Sandra McCloud; John Arellano; Gaylene Timmons; Cildy Bone; Roy Wilson; Rudy Slaughter; Nancy Wilson; Deborah Wilson and Herb Davis, Defendants–Appellants.

No. 88–15161.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Memorandum Decided May 2, 1989.

Order and Opinion Decided Aug. 8, 1989.

Robert B. Bryzman, Legal Services of Northern Cal., Inc., Redding, Cal., for defendants-appellants.

Maria A. Iizuka, Atty., Land & Natural Resources Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWNING, BEEZER and KOZINSKI, Circuit Judges.

PER CURIAM:

Claiming rights of exclusive possession to a tract of land occupied by defendants, the United States brought an action for forcible entry and unlawful detainer, seeking an order for the removal of any individual currently in possession of the property. After the United States moved for summary judgment, defendants moved for a continuance on grounds that they wished to take further discovery; the district court refused and instead granted the government's summary judgment motion. Defendants appeal. We review the district court's refusal of the continuance for an abuse of discretion, *see Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir.1988), and its grant of summary judgment de novo. *See Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 940 (9th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988).

## Facts

In 1973, the Bureau of Indian Affairs issued a use permit to Toyon Wintu Center, Inc. (the Center), for a 61–acre tract of government-owned land in Shasta County, California. The use permit authorized the Center to "enter into rental agreements with such present occupants of the premises as Permittee deems proper." Excerpts of Record (ER) at 24. The permit was issued for "an indefinite period of time" and could "be terminated at the discretion of either the Permittor or the Permittee." *Id.* at 25. In 1984, the BIA terminated the 1973 use permit and issued the Center a "Revocable Use Permit." This permit, issued on May 8, 1984, provided that:

> Permittee shall enter into rental agreements with such persons as Permittee in its discretion and in accordance with [Permittee's articles of incorporation] deems proper. Said rental agreements shall be subject to the terms and conditions of this permit.
>
> . . . .
>
> This permit shall take effect and begin on the date of approval, and shall continue so long as beneficial use is made of the premises as specified herein, but in no event shall it extend beyond *one year* from the date of its approval.

(emphasis original). ER at 26, 29.

After the use permit expired in July 1985, the BIA issued eviction notices to all 34 persons on the property. The Center and certain occupants of the property brought suit to enjoin the BIA from terminating the use permit. *See Toyon–Wintu Center, Inc. v. United States Dep't of the Interior,* Civ. S–85–1144–MLS (E.D.Cal. 1985); *Scholfield v. Hodel,* Civ. S–85–1322–MLS (E.D.Cal.1985). On April 20, 1987, the parties in these suits entered into a stipulated judgment which provided that all the individual plaintiffs and "all those under control" of the Center had to vacate the residential structures and move off the property within 60 days. *Toyon–Wintu Center, Inc. v. United States Dep't of the Interior,* Civ. S–85–1144–MLS; *Scholfield*

*v. Hodel,* Civ. S–85–1322–MLS, Stipulation for Entry of Judgment and Order Approving Entry of Final Judgment in Action [Stipulation], at 2 (April 20, 1987). ER at 33. The stipulated judgment also stated that "[a]ny person remaining on the residential portion of the property after the vacation date shall be deemed not to have been given consent to occupy the premises by any of these parties." *Id.*[1]

On February 19, 1988, the government filed the present complaint, seeking an order enforcing the stipulated judgment and directing the removal of the holdovers and trespassers. On May 20, 1988, the government moved for summary judgment. On June 24, 1988, the district court held that the government enjoyed the right to exclusive possession of its property upon termination of the revocable use permit between the Center and the BIA, granted summary judgment in favor of the government, and issued an order for the vacation of the property.

## Discussion

■ **A.** Defendants first argue that the BIA never terminated the use permit with the Center because the government continued to honor it after the stated termination date of May 1985. According to the defendants, the BIA was required to continue honoring the permit's condition that no tenant may be evicted without good cause or without notice and an opportunity to cure. Regardless of the BIA's actions in honoring the permit after the termination date, the stipulated judgment between Toyon Wintu Center and the government ended whatever legal relationship existed between the two entities. *See* Stipulation at 2. Therefore, the cause and notice terms of the revocable use permit no longer remained in force and could not bar summary eviction of defendants.

**B.** Alternatively, defendants contend that the stipulated judgment between the BIA and the Center did not impair defendants' rights as sublessees of the Toyon residences. Defendants argue that, not-

---

1. Two of the *Scholfield* plaintiffs—Mickey Gemmill and Lauri Davis—stipulated to the dismis-

sal of their complaints rather than to judgment. Both are defendants in this case.

withstanding the stipulation, their rental agreements with the Center granted them rights that continued to be enforceable against the government. Pursuant to those rights, they argue, they cannot be evicted without cause and ample notice.

Most defendants are able to point to no evidence in the record supporting this claim. Only two defendants, Mickey Gemmill and Lauri Davis, filed declarations stating that they entered into written rental agreements with the Center; Davis alone appended a copy of the written agreement to her declaration. Thus, only Davis, by virtue of her rental agreement with the Center, can plausibly claim a possessory interest in the continued use of the property.

■ Davis' rental agreement provides only for a month-to-month arrangement "until either party shall terminate the same by giving the other party 30 days written notice." Davis Declaration, Exhibit A at 1 (June 10, 1988). The agreement therefore does not support Davis' claim that she was entitled to a showing of good cause for termination.

C. Defendants next argue that the use permit's reference to providing and improving housing for "needy Indian families"[2] converts the permit from a simple contract between the government and the Center into a federal program for their benefit. Defendants argue that the BIA may not terminate their rights under this program without first showing good cause for their eviction.

■ A fiduciary relationship will "arise[ ] when the Government assumes ... control over ... property belonging to Indians." *United States v. Mitchell*, 463 U.S. 206, 225, 103 S.Ct. 2961, 2972, 77 L.Ed.2d 580 (1983). Such a relationship may also be created where property is purchased or set aside by the government for the express benefit of Indians. *Coast Indian Community v. United States*, 213 Ct.Cl. 129, 550 F.2d 639, 642–44 (Ct.Cl.1977) (Indians residing on government-owned land, purchased pursuant to the Indian Reorganization Act and held in trust as an Indian reservation, found to be beneficial owners of easement rights); *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F.Supp. 252, 254, 256 (D.D.C.1973) (executive order setting aside public lands for exclusive use of Indians imposes fiduciary duty upon government to protect those rights).

■ None of these conditions exist here. The Toyon residences are neither owned by the Wintu Indians nor purchased or set aside for their benefit by the government. Nor have defendants proffered any evidence, apart from the permit itself, supporting their contention that the arrangement between the Center and the BIA was a part of a federal Indian housing policy. *Cf. Hohri v. United States*, 782 F.2d 227, 244 (D.C.Cir.1986) (declining to "infer a broad contractual commitment [by government] to act as fiduciary [on behalf of interned Japanese–Americans] on the basis of an alleged contract to supply specific services"), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

D. Defendants argue that a trust relationship between the government and the Wintu Indians may be inferred from the government's exercise of "supervision or control over the affairs or property of Indians," Appellant's Opening Brief at 21. They also contend that the statement in the 1984 Revocable Use Permit that "the permitted premises are in trust,"[3] creates a trust relationship between the government and the Indians.

---

2. The 1984 Revocable Use Permit stated in part: The major objective of the Toyon Wintu Center, Incorporated, is to promote, coordinate and execute a general housing program within the confines of the Toyon Center aimed at providing and improving housing and living conditions of needy Indian families. ER at 26.

3. The permit stated: "While the permitted premises are in trust or restricted status, all of the Permittee's obligations under this permit, and the obligations of its sureties, are to the United States, as well as, to the owner of the land." ER at 29.

Absent some showing of federal control or supervision over tribal monies or properties, *see Mitchell,* 463 U.S. at 225, 103 S.Ct. at 2972, or the existence of a fiduciary duty based on an authorizing document such as a statute or a regulation, *see id.* at 224, 103 S.Ct. at 2971–72; *Pawnee v. United States,* 830 F.2d 187, 192 (Fed.Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988); *McNabb v. Bowen,* 829 F.2d 787, 793–94 (9th Cir.1987); *Fox v. Morton,* 505 F.2d 254 (9th Cir.1974), there can be no trust relationship between the Wintu Indians and the BIA. *See Navajo Tribe of Indians v. United States,* 224 Ct.Cl. 171, 624 F.2d 981, 988 (Ct.Cl.1980) ("if no tribal money or property is involved and the question is, for instance, whether the United States has a general fiduciary obligation to educate Indians, the existence of the special relationship for that purpose depends on the proper interpretation of the terms of some authorizing document (*e.g.* statute, treaty, executive order)").

Defendants can point to no such authorizing document imposing fiduciary responsibilities upon the BIA. Nor have they presented any evidence suggesting that the government held, controlled or supervised tribal property or money. Indeed, apart from the Slagle Declaration (which merely describes the difficulties faced by the Wintu Indians in their attempt to gain federal tribal recognition), and the single reference to the word "trust" in the revocable use permit, defendants have offered no evidence suggesting the existence of a trust relationship. In short, defendants have failed to offer any material evidence that would call into question the government's right to exclusive possession of the property.

**E.** Defendants next claim that the government failed to comply with the substantive and procedural requirements of California's unlawful detainer statute. Specifically, they argue that the government failed to allege or prove that it provided defendants with adequate notice of eviction under California Civil Procedure Code § 1161 (West 1982). Although the government's complaint might have been more specific, it plainly stated a claim under section 1161(1), which provides that a tenant of real property is guilty of unlawful detainer "[w]hen he continues in possession, in person or by subtenant, of the property ... after the expiration of the term for which it is let to him." Cal.Civ. Proc.Code § 1161(1). Unlike other subsections,[4] section 1161(1) does not require notification of either the tenant (i.e., the Center), or those under its control (i.e., defendants), before bringing an unlawful detainer suit. *See, e.g., Earl Orchard Co. v. Fava,* 138 Cal. 76, 78–79, 70 P. 1073 (1902); *Castle Park No. 5 v. Katherine,* 91 Cal. App.3d Supp. 6, 10 n. 4, 154 Cal.Rptr. 498, 500 n. 4 (1979); *Buck v. Morrossis,* 114 Cal.App.2d 461, 466, 250 P.2d 270, 274 (1952) (under § 1161(1) neither tenant nor subtenant entitled to notice prior to institution of unlawful detainer proceedings). The district court thus correctly rejected defendants' contention that the government failed to comply with the notice requirements of the unlawful detainer statute.

**F.** Defendants also contend that the district court erred in considering the declaration of Karole D. Overberg, attached to the government's summary judgment motion. To the extent this may have been error, it was harmless. The Overberg declaration was not necessary for purposes of establishing the government's right of unim-

---

**4.** Sections 1161(2)–(4), for example, require three days' notice to tenants prior to institution of an unlawful detainer action. The difference in notification requirements reflects a common sense distinction between these two types of unlawful detainer actions. The requirement of notice is warranted where the landlord alleges that the tenant has broken a condition of the lease and wishes to summarily evict the tenant prior to the expiration of the lease. The three-day notice requirement affords the tenant an opportunity to avoid eviction by curing the alleged breach of the lease (i.e., payment of overdue rent, repair of damaged property). The notice requirement is inapplicable where the tenants remain on the property after the expiration of their term of occupancy. In that case, there is no need for notice, since there is no alleged defect to cure: The tenants are presumed to be aware of the date their lease expires.

paired possession. The district court based its grant of summary judgment on the stipulated judgment, which sufficed to demonstrate the government's exclusive ownership of the subject property. *See* 4 B. Witkin, *Summary of California Law* 890–91 (9th ed.1987) (describing pleading requirements for unlawful detainer complaint).

G. Defendants raise numerous affirmative defenses, arguing, for example, that the government's actions constitute a retaliatory eviction and violate their due process and first amendment rights. The district court correctly concluded that the defendants' evidence was too speculative to withstand plaintiffs' motion for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment may be granted against a non-moving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F.2d 872, 876 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party must then offer evidence of such a caliber that "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Here, defendants offer little more than a conclusory statement of fact and self-serving declarations in support of their affirmative defenses. Their evidence is entirely too speculative to support any of their contentions, or to raise serious doubts as to the government's right to unimpaired possession of its property.

■ H. Finally, defendants argue that the district court should have continued summary judgment proceedings so that they could conduct further discovery. Although defendants never formally moved for a continuance under Rule 56(f), the court considered defendants' oral request for additional discovery. The court concluded that the defendants had had ample time to conduct discovery and that the request for additional time was little more than "a delaying proposition." Reporter's Transcript at 28 (June 24, 1988). Defendants also contend that the district court erred in refusing to continue the summary judgment proceedings without considering the declaration of defendants' attorney, Robert Bryzman, which stated areas in which defendants felt further discovery would be needed.

The district court did not abuse its discretion. Defendants had ample opportunity to conduct discovery. Almost three months elapsed between the filing of the answer and the government's motion for summary judgment. During that time, defendants made no serious effort to discover facts supporting any of their contentions.

Nor did the district court deny defendants' request for additional discovery in a hasty or precipitous manner. Rather, the court considered defendants' request on two occasions: first, at the summary judgment hearing; then, again, upon defendants' motion for reconsideration. The transcript of the June 24, 1988, summary judgment hearing makes clear that the district court afforded the defendants ample opportunity to explain why additional discovery was warranted. *See* Reporter's Transcript at 16–28. Moreover, the district court reviewed the entire record, as well as the Bryzman declaration, when it granted defendants' motion to reconsider its grant of summary judgment. Defendants therefore cannot argue that the district court rejected their request for additional discovery without the benefit of the Bryzman declaration.

The district court's order granting of summary judgment and directing defendants to vacate the property is AFFIRMED.