**UNITED STATES of America,
Plaintiff,**

v.

**1020 ELECTRONIC GAMBLING
MACHINES, Defendant.**

**No. CS–98–265–FVS.**

United States District Court,
E.D. Washington.

Dec. 10, 1998.

---

James R. Shively, Thomas O. Rice, Assist. U.S. Attorneys, Spokane, WA, for plaintiff.

Scott D. Crowell, David R. Lundgren, Kirkland, WA, for defendant.

## ORDER GRANTING FORFEITURE

VAN SICKLE, District Judge.

**THIS MATTER** came before the Court based upon cross motions for summary judgment. The United States was represented by Assistant United States Attorneys James R. Shively and Thomas O. Rice. The Spokane Tribe of Indians was represented by Scott D. Crowell and David R. Lundgren.

### I.

The Spokane Tribe of Indians ("Tribe") is operating 1020 electronic gambling machines on its reservation. The United States seeks the machines' forfeiture under the Johnson Act, 15 U.S.C. §§ 1171–1178. The Tribe has filed a claim to the machines, *see* Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C., and opposes the government's request for forfeiture. The Court has jurisdiction by virtue of 28 U.S.C. §§ 1345 and 1355.

### II.

The Johnson Act prohibits the possession of gambling devices within Indian country. 15 U.S.C. § 1175(a).[1] Gambling devices possessed in violation of § 1175(a) are subject to forfeiture. 15 U.S.C. § 1177. Forfeiture actions brought under the Johnson Act are governed by "customs laws." *Id.* Consequently, the parties' burdens in this action are derived from 19 U.S.C. § 1615. *United States v. $129,727.00 U.S. Currency*, 129 F.3d 486,

---

1. Subsection (a) provides in its entirety:

   It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of Title 18, including on a vessel documented under chapter 121 of Title 46 or documented under the laws of a foreign country.

492 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998). Under 19 U.S.C. § 1615, the United States must first demonstrate probable cause to believe the defendant machines are being possessed or used in violation of 15 U.S.C. § 1175(a). *See id.* If the United States does so, the burden shifts to the Tribe to demonstrate that the machines are not forfeitable. *See id.*

The Tribe concedes the defendant machines are gambling devices as defined by 15 U.S.C. § 1171. (Stipulation of August 3, 1998 at 2–3.) The Tribe further concedes the machines are being possessed and used within Indian Country. *Id.* The Tribe's concession is sufficient to establish probable cause. Thus, the burden shifts to the Tribe to explain why the machines should not be forfeited. 19 U.S.C. § 1615.

### III.

■ Since, according to the Tribe, the Johnson Act does not preclude states from possessing or using gambling devices, Indian tribes should be excluded as well. As authority, the Tribe cites *Reich v. Great Lakes Indian Fish and Wildlife Commission,* 4 F.3d 490 (7th Cir.1993) (hereinafter *"Great Lakes"*). In that case, the question was whether a section of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, that limits the circumstances in which state and local governments must pay overtime to their law enforcement officers applies to Indian tribes even though the FLSA does not mention tribes. *Id.* at 493. Finding no good reason to deny Indian tribes the benefit of the exception, and concluding that considerations of comity and respect for tribal sovereignty weighed in favor of extending the exception to tribes, the Seventh Circuit did just that. *Id.* at 494–95.

The Tribe's reliance upon *Great Lakes* is misplaced. In order for the Seventh Circuit's rationale to apply, § 1175(a) would have to allow states, but not Indian tribes, to operate gambling devices within "Indian Country." Nothing could be further from

the truth. Section 1175(a) makes no distinction between tribes and states with respect to the operation of gambling devices on Indian reservations. As a result, the Seventh Circuit's decision offers little guidance here.

Next, the Tribe argues that § 1175(a) does not prevent Indian tribes from possessing or using gambling devices. The Tribe notes that state regulation of gaming on Indian reservations implicates tribal sovereignty. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 218–22, 107 S.Ct. 1083, 1093–95, 94 L.Ed.2d 244 (1987). Since, as a general rule, tribal sovereignty may not be infringed absent an unmistakable expression of Congressional intent, *see Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978), and since § 1175(a) does not mention Indian tribes, the Tribe submits it is not governed by § 1175(a).

The Tribe is mistaken. Section 1175 clearly governs gaming on Indian reservations. *See, e.g., United States v. Farris,* 624 F.2d 890, 898 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981). Moreover, the sweeping language of § 1175(a) is an unmistakable indication Congress intended to divest all persons—including Indian tribes—of the authority to operate gambling devices within Indian country.[2] Consequently, the fact Indian tribes are not mentioned in § 1175(a) is of no significance. *See Donovan v. Coeur d'Alene Tribal Farm,* 751 F.2d 1113, 1115–16 (9th Cir.1985).

That conclusion is supported by the text of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq. IGRA divides games of chance into three classes. *United States v. Spokane Tribe of Indians,* 139 F.3d 1297, 1299 (9th Cir.1998) ("Spokane Tribe"). The defendant machines are used for Class III gaming. As the United States points out, IGRA creates a conditional exemption for class III gaming:

---

**2.** Nothing in 15 U.S.C. § 1175(a) limits its     application to individuals.

The provisions of section 1175 of Title 15 shall not apply to any (class III) gaming conducted under a Tribal–State compact that—

(A) is entered into ... by a State in which gambling devices are legal, and

(B) is in effect.

25 U.S.C. § 2710(d)(6). The fact Congress created a conditional exception for class III gaming indicates that Congress intends such gaming and its sponsors to remain subject to § 1175(a) until the relevant conditions are satisfied.

For the defendant machines to be exempt from § 1175(a), the Tribe must have a compact with the State of Washington. 25 U.S.C. § 2710(d)(6). The Tribe freely concedes it does not. Thus, the defendant machines are subject to § 1175(a). *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1046 (9th Cir.1996) (where an Indian tribe operated slot machines that were not permitted by its IGRA compact with the State of Montana, "the Johnson Act [was] applicable and the use of slot machines [was] illegal").

### IV.

Nonetheless, the Tribe objects to forfeiture, alleging that the State of Washington has refused to negotiate in good faith. Since the Tribe cannot bring an action in federal court to compel the State to negotiate, *Spokane Tribe*, 139 F.3d at 1299, the Tribe argues that the Attorney General has a duty to bring an action against the State on its behalf, or that the Secretary of the Interior has a duty to promulgate regulations adjudicating its rights under IGRA.

■ The United States "owes a fiduciary obligation to all Indian tribes as a class." *Inter Tribal Council of Arizona v. Babbitt*, 51 F.3d 199, 203 (1995). More specific fiduciary duties may arise when the United States manages Indian resources. *See id.* For example, in *United States v. Mitchell*, 463 U.S. 206, 210, 103

S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983), the Supreme Court noted that the Secretary of the Interior had assumed a "pervasive role" in the sale of timber grown on the Quinault Reservation in western Washington. *Id.* at 219, 103 S.Ct. at 2969. The Secretary's role was spelled out in detail in timber management statutes and the regulations promulgated thereunder. *Id.* 219–223, 103 S.Ct. at 2969–71. Those statutes and regulations, the Supreme Court said, "clearly [gave] the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians. They thereby establish[ed] a fiduciary relationship and define[d] the contours of the United States' fiduciary responsibilities." *Id.* at 224, 103 S.Ct. at 2971–72.[3]

■ The Tribe argues that specific fiduciary duties may be imposed upon the United States based upon the roles assigned to the National Indian Gaming Commission, 25 U.S.C. § 2704, and the Secretary of the Interior. Neither contention can be sustained.

The Commission does have significant powers. 25 U.S.C. § 2706. However, the authority it exercises is regulatory in nature, not managerial. Furthermore, it regulates class II gaming, whereas this case involves class III gaming. As a result, there is no basis for imposing specific trust duties upon the United States due to the Commission's role in Indian gaming.

Evaluating the role assigned to the Secretary of the Interior is more complicated because IGRA has been altered by the Supreme Court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74–75, 116 S.Ct. 1114, 1133, 134 L.Ed.2d 252 (1996) (Congress violated the Eleventh Amendment by including a clause abrogating the states' immunity from suit in federal court). However, even before *Seminole*, the Secretary was not responsible for negotiating Tribal–State compacts. That was the task

---

**3.** There is no reason to limit *Mitchell* to damage claims. *See, e.g., Shoshone–Bannock Tribes v. Reno*, 56 F.3d 1476, 1482–83 (D.C.Cir.1995) (applying *Mitchell* to a tribe's request that the Attorney General bring an action on its behalf).

of tribes and states. 25 U.S.C. § 2710(d)(3). Nor was the Secretary responsible for bringing failure-to-negotiate actions against states. That was the task of tribes. 25 U.S.C. § 2710(d)(7). Nor was the Secretary assigned a major role in resolving such disputes. During the pre-*Seminole* dispensation, federal courts were to appoint independent mediators. 25 U.S.C. § 2710(d)(7)(B)(iv). It was the mediator who evaluated competing compacts. *Id.* While the Secretary was responsible for promulgating those regulations necessary to implement the mediator's decision, the Secretary's discretion was limited. 25 U.S.C. § 2710(d)(7)(vii). Finally, after a compact was in place, the Secretary had no role in managing class III gaming. That was the tribe's responsibility. In the aftermath of *Seminole*, the Secretary's role is even less significant. As a result, there is no basis for imposing specific trust duties upon the United States due to the Secretary's role in Indian gaming. *See Pueblo of Santa Ana v. Kelly*, 932 F.Supp. 1284, 1298 (D.N.M.1996), *affirmed on other grounds*, 104 F.3d 1546 (10th Cir.1997). *Cf. Shoshone–Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C.Cir.1995) ("an Indian tribe cannot force the government to take a specific action unless a treaty, statute or agreement imposes, expressly or by implication, that duty").

That view is not unanimous of course. In *Chemehuevi Indian Tribe v. Wilson*, 987 F.Supp. 804, 808 (N.D.Cal.1997), another court concluded:

> A duty on behalf of the United States to sue the State to bring it to the bargaining table can certainly be implied from IGRA, since it appears that that is the only legal remedy available to the plaintiff Tribes to seek the benefits Congress intended them to have and to preserve the balance Congress carefully struck between the interests of the states and the tribes.

While *Chemehuevi* offers a solution to the dilemma posed by *Seminole*, the solution *Chemehuevi* offers is not without problems of its own. For one thing, while it is clear Congress intended Indian tribes to have a remedy against recalcitrant states, it is equally clear Congress did not intend the Secretary to litigate failure-to-negotiate claims. Indeed, since *Seminole*, Congress has taken steps to keep the Secretary out of the fray. Department of the Interior and Related Agencies Appropriations Act, 1998, Pub.L. 105–83, § 129(b)(1)(A), 111 Stat. 1543, 1568 ("During fiscal year 1998, the Secretary may not expend any funds made available under this Act to review or approve any initial Tribal–State compact for class III gaming entered into on or after the date of enactment of this Act."). Consequently, had Congress anticipated *Seminole*, it is unlikely Congress would have required the Secretary to bring failure-to-negotiate claims against states.

For another thing, "[a]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 84 L.Ed.2d 714 (1985) (citations omitted). This case illustrates the wisdom of that rule. Indian gaming raises a number of complicated issues. 25 U.S.C. § 2702. *Seminole* has not made the resolution of those issues any easier. Confronted with a difficult situation, neither the Secretary nor the Attorney General wants to bring an action against the State of Washington. Instead, the Attorney General has decided to seek forfeiture of the defendant machines. This Court is in no position to second guess that decision. *See Heckler*, 470 U.S. at 831–32, 105 S.Ct. at 1655–56 (explaining why the judiciary is ill suited to review enforcement decisions).

That leaves the Tribe's request for agency rulemaking. The Tribe insists that the Secretary may act unilaterally to prevent a state from obstructing federal legislation, *see Alabama v. United States Department of Interior*, 84 F.3d 410, 418–19 (11th Cir.1996), and that the Secretary should be required to exercise that authority in this instance. The Tribe's suggestion is unpersuasive. One, there is no

credible evidence of bad faith on the State's part.[4]  Two, the Secretary has chosen not to exercise his rulemaking authority in this instance.  Since he has no trust-related duty to issue regulations, his decision to refrain from doing so is not subject to review.  *See Heckler,* 470 U.S. at 831, 105 S.Ct. at 1655.

## V.

The Tribe may not avoid forfeiture even if the Attorney General has a duty to bring a failure-to-negotiate action against the State, or the Secretary has a duty to engage is rulemaking.  The purpose of a failure-to-negotiate action (and, to a lesser extent, administrative rulemaking) is to bring a state to the bargaining table.  It is unclear how long negotiations would take in this case, or whether they would result in a Tribal–State compact approving the use of the defendant machines.[5]  Unless and until a compact is reached, the Tribes' possession and use of the defendant machines is unlawful.  15 U.S.C. § 1175(a); 25 U.S.C. § 2710(d)(6).  The Tribes are not entitled to engage in a continuing violation of the Johnson Act in the hope their behavior will be validated someday.

## VI.

The Johnson Act makes it unlawful for the Tribe to possess or use the defendant machines on its reservation.  15 U.S.C. § 1175(a).  The Tribe is bound by that prohibition unless, at a minimum, its has a Tribal–State compact authorizing the use of the machines, 25 U.S.C. § 2710(d)(6), and the machines are legal in Washington. 25 U.S.C. § 2710(d)(6)(A).  Since the Tribe freely concedes it does not have a compact

with the State of Washington, the machines are subject to forfeiture whether or not the State permits their use.  Consequently, the question of the machines' legality need not be resolved in this proceeding.  The United States is entitled to custody of the machines pursuant to the stipulation of August 3, 1998.

## VII.

To summarize, the Supreme Court's *Seminole* decision makes it more difficult for Indian tribes to conduct class III gaming on their reservations.  Congress is aware of that fact.  Congress may change the law if chooses to do so.  Until it does, the Tribe is violating the Johnson Act by operating 1020 electronic gambling machines on its reservation.  This Court is not free to ignore the violation or rewrite federal law.

**IT IS HEREBY ORDERED:**

1.  The government's "Motion for Warrant of Arrest *in Rem* and Writ of Entry" (Ct.Rec.2) is granted.

2.  The government's motion for summary judgment (Ct.Rec.13) is granted. The Tribe is to surrender the defendant machines to the United States pursuant to the terms of the stipulation of August 3, 1998.

3.  The Tribe's motions to dismiss (Ct. Rec.19) and to stay (Ct.Rec.20) are denied.

4.  All other pending motions are denied as moot.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to en-

---

4.  Recently, for example, the State reached an agreement concerning Indian gaming with twelve Washington tribes.  *Commission Approves Online Lottery Games For 12 Tribes,* Seattle Post–Intelligencer, November 13, 1998.

5.  Two United States District Courts (this one included) have determined that the laws of the State of Washington do not permit the use of slot machines.  *United States v. Approximately 108 Electronic Gambling Machines,* C98–5321R  (W.D.Wash.  Sept.  18,  1998);

*Washington v. The Confederated Tribes of the Chehalis Reservation,* No.  C–95–1805–FVS (E.D.Wash. Sept. 26, 1997).  Nor are the relevant state statutes likely to change anytime soon.  On two occasions, Washington voters have refused to ease state laws that effectively restrict gaming on Indian reservations.  Jim Simon, *Major Defeat for Gambling Measure,* Seattle Times, November 8, 1995;  Barbara A. Serrano, *Bears Win One, But Tribes Lost Bet on Gambling Measure,* Seattle Times, November 6, 1996.

ter this Order and furnish copies to counsel.