NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANDREW DOHRMANN; et al., | No. 20-15466 |
| Plaintiffs-Appellees, | D.C. No. 3:19-cv-02546-CRB |
| v. | |
| INTUIT, INC., | MEMORANDUM* |
| Defendant-Appellant, | |
| and | |
| H&R BLOCK, INC.; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted July 16, 2020
San Francisco, California

Before: IKUTA and HURWITZ, Circuit Judges, and TAGLE,** District Judge.
Dissent by Judge TAGLE

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Hilda G. Tagle, United States District Judge for the Southern District of Texas, sitting by designation.

This is a putative class action against Intuit, Inc., which offers "TurboTax" online tax preparation software, alleging state law claims relating to the named Plaintiffs' 2018 federal tax returns. The district court denied Intuit's motion to compel arbitration. We have jurisdiction of Intuit's appeal under 9 U.S.C. § 16(a)(1); we reverse with instructions to compel arbitration.

1.    We review the denial of a motion to compel arbitration de novo. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). We also determine de novo whether a hyperlink to a website's terms of use is sufficiently conspicuous under California law if the "material evidence consists exclusively of screenshots from the Web site . . . and the authenticity of these screenshots is not subject to factual dispute." *Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 123 (Cal. Ct. App. 2016) (describing this as a "pure question of law").[1]

2.    To determine "whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen*, 763 F.3d at 1175 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The internet has "not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Long*, 200 Cal. Rptr. 3d at 122 (cleaned up). Mutual assent does not require that the offeree have actual notice of the terms of an

---

[1]    The parties agree that California law governs the issue of arbitrability.

arbitration agreement. *Id.* at 123. Instead, an offeree is bound by an arbitration clause if "a reasonably prudent Internet consumer" would be put on "inquiry notice" of the "agreement's existence and contents." *Id.*

There are two typical internet contracts: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use" and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. "[T]he validity of [a] browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions.'" *Id.* at 1176 (citation omitted). We are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement." *Id.* Thus, "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." *Id.* at 1177. We look to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in assessing "whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Id.*

3

During the relevant timeframe, a user accessing a TurboTax account, after entering a user ID and password, was required to click a "Sign In" button, directly under which the following language appeared: "*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement.*"[2]  The terms "Turbo Terms of Use," "TurboTax Terms of Use" and "Privacy Statements" were each light blue hyperlinks which, if clicked, directed the user to a new webpage.  A user clicking on the hyperlink "TurboTax Terms of Use" was directed to a copy of the "Intuit Terms of Service for TurboTax Online Tax Preparation Services," which contained the arbitration clause.

TurboTax's website therefore required users to "affirmatively acknowledge" the agreement before proceeding, and the website contained "explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1176.  The relevant warning language and hyperlink to the Terms of Use were conspicuous – they were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered.  *See id.* at 1177.  TurboTax's website therefore provided sufficient notice to a reasonably prudent internet user of its Terms of Use, which include an arbitration clause.  *See Long*, 200 Cal. Rptr. 3d at 123; *see also Lee v.*

---

[2]     One Plaintiff accessed his TurboTax account through a slightly different sign-in page.  But the parties do not dispute that the page's relevant features are nearly identical.

*Ticketmaster LLC*, No. 19-15673, 2020 WL 3124256, at *2 (9th Cir. June 12, 2020).[3]

3.      The Terms of Use provide both that "any dispute or claim" "will be resolved by binding arbitration" and that "any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction." Relying on the latter language, the district court indicated that even if the dispute between the Plaintiffs and Intuit was subject to arbitration, it could nonetheless itself adjudicate Plaintiffs' claims for equitable relief.

We agree with Intuit that the contract only permits the district court to issue equitable relief in aid of arbitration, not determine the merits of an arbitrable dispute.[4] *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (cleaned up)). The language "any party to the arbitration," "suggests

---

[3]      Because conspicuousness is a question of law, the opinion of Plaintiffs' cognitive science expert does not affect this conclusion. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996).

[4]      Although the district court did not definitively decide this issue, we exercise our discretion to consider this "purely legal issue" in the first instance because both parties addressed this issue extensively in their briefs. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1110-11 (9th Cir. 2020); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991) (holding that the interpretation of the scope of the arbitration clause is a question of law).

that arbitration still applies to all disputes, but that in addition, the parties are 'entitled to pursue equitable remedies' before courts." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009). "If the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so" without this language and "[b]ecause the parties included this language, it is plausible and a permissible contract interpretation that the equitable claims exception . . . was intended to apply only to claims designed to maintain the status quo between the parties." *Id.*

**REVERSED AND REMANDED.**[5]

---

[5] We grant Intuit's requests for judicial notice. *See* Fed. R. Evid. 201(d).

*Andrew Dohrmann v. Intuit, Inc.*, No. 20-15466

FILED

AUG 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TAGLE, District Judge, dissenting:

The appearance of links to two different products' terms of use on the sign-in screen, Turbo Terms of Use and TurboTax Terms of Use, is confusing. More than one terms-of-use link on a sign-in screen by itself is enough to confound a reasonably prudent user. The inconspicuous placement and color of the links obscures the two links within an already small sign-in box. Finally, binding users to terms that appear after sign-in credentials runs contrary to ordinary state law principles that govern the formation of a contract and to a reasonable person's understanding of contracts which in the ordinary course of business place terms and conditions before a signature. I do not believe a reasonably prudent user would have inquiry notice of the terms of use and arbitration agreement. I would affirm the district court's decision. I respectfully dissent.